F I L E D

**IN THE CIRCUIT COURT OF LAWRENCE COUNTY, ARKANSAS
CIVIL DISTRICT**

FEB 0 3 2017
*10:15 AM*
*Middle Eans* Circuit Clerk
Lawrence Co., AR

**LACEY ROBINETT, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED**                                    **PLAINTIFF**

**VS.**                        **CASE NO. CV-2017-15**

**SURVIVAL FLIGHT, INC.**                               **DEFENDANT**

<u>**CLASS ACTION COMPLAINT**</u>

Comes now Plaintiff, Lacey Robinett, Individually and on Behalf of All Others Similarly

Situated, by and through her undersigned attorneys, Lacy Law Firm and Jeff Scriber, P.A., and

for their Class Action Complaint against Defendant, Survival Flight, Inc., and states and alleges

the following:

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff is an individual resident of Lawrence County, Arkansas.

2.      Defendant Survival Flight, Inc. (hereinafter "Survival Flight") is a foreign

corporation with its principal place of business in a state other than Arkansas.  Survival Flight is

a company that operates in Arkansas, Illinois, Missouri, and Oklahoma and is an emergency

medical transportation company dedicated to air medical transportation of patients to nearby

emergency medical facilities.  Survival Flight's registered agent for service of legal process is

Andy Arthurs, 4259 CR 6540, West Plains, Missouri 65775.

3.      This Court has subject matter jurisdiction over this action due to the amount and

type of relief sought and because the amount in controversy exceeds the minimum jurisdictional

limits of this Court.

4.      This Court has personal jurisdiction over the Defendant pursuant to Ark. Code

Ann. § 16-4-101 as Defendant has had more than minimum contacts with the State of Arkansas

1

and has availed itself of the privilege of conducting in business in this State. In addition, as explained below, Defendant has committed affirmative acts within the State of Arkansas which give rise to civil liability.

5.      Venue is appropriate in this forum pursuant to Ark. Code Ann. § 16-55-213 because of the residence of the Plaintiff and because the substantial part of the events giving rise to the Plaintiff's claims occurred in this county.

## GENERAL ALLEGATIONS

### A. Lacey Robinett's Motor Vehicle Collision

6.      Lacey Robinett was involved in a motor vehicle collision in Lawrence County, Arkansas on December 26, 2015. The driver of the at-fault vehicle, Jeffery Allen Quigley, was a resident of the State of Missouri.

7.      Lacey Robinett suffered, *inter alia,* a head injury in the collision. At the direction of law enforcement and the emergency personnel at the scene, Ms. Robinett was transported by helicopter owned and operated by Survival Flight to Regional One Health, a level one trauma center in Memphis, Tennessee, for evaluation and treatment of her injuries.

8.      Lacey Robinett was, at all times relevant to this suit, an Arkansas Medicaid recipient.

9.      As a condition of her transportation by helicopter, Survival Flight was assigned all rights belonging to Ms. Robinett as an Arkansas Medicaid beneficiary. This included an assignment of benefits authorizing Survival Flight to bill Medicaid directly and to receive direct reimbursement from Medicaid for medical services provided to Ms. Robinett. *See* Exhibit 1.

2

10.     The "standard" charges for the treatment provided to Ms. Robinett by Survival Flight, without reducing the amount as required by Survival Flight's contract with Arkansas Medicaid, totaled $50,400.60.

11.     Following her release from treatment, Ms. Robinett pursued a claim against the at-fault driver responsible for the motor vehicle collision, and his liability insurer, American Family Insurance. Ultimately, American Family Insurance offered the limits of its policy of insurance with Mr. Quigley in the amount of $100,000.00 to settle Ms. Robinett's tort claim against its insured.

12.     Survival Flight has attempted to collect the full amount of its bill, $50,400.60. In fact, Survival Flight has asserted a lien for the full amount of its bill. *See* Exhibit 2.

13.     Lacey Robinett's counsel in the claim against the at-fault driver responsible for the motor vehicle collision wrote Survival Flight on multiple occasions indicating that it needed to submit the bill to Ms. Robinett's Medicaid carrier, QualChoice, for payment. *See* Exhibit 3.

14.     In response, Survival Flight did submit the bill to QualChoice and received the scheduled Medicaid reimbursement amount of $5,000.00.

15.     Although the difference allegedly due between the Medicaid scheduled reimbursement rate and Survival Flight's "standard charge" is $45,346.00, and does not represent a co-payment or deductible amount, Survival Flight has insisted on sending the bill for the balance to Ms. Robinett and is asserting its entitlement to this amount as a right against Ms. Robinett's third-party liability claim. *See* Exhibit 4.   Moreover, Survival Flight has refused to acknowledge that it has received payment from Medicaid in full satisfaction of the bill.

### B. The Arkansas Medicaid Program

16.     Title XIX of the Social Security Act created a joint Federal-State medical assistance program commonly referred to as Medicaid.  Ark. Code Ann. § 20-77-107 authorizes the Arkansas Department of Human Services to establish a Medicaid program in Arkansas.  The Medicaid program provides necessary medical services to eligible persons who would not be able to pay for such services.

17.     The Arkansas General Assembly has enacted statutes to implement the Medicaid program in Arkansas.  It is the stated intent of the General Assembly that the Medicaid program is intended to be supplemental to other potential sources of payment which are or may be available to pay for the cost of medical care delivered to the beneficiaries.

18.     Thus, the Arkansas legislature enacted statutes to allow the State of Arkansas to seek reimbursement from third party sources _after_ Medicaid benefits have been paid to medical care providers.

19.     The Arkansas statutes specifically prevent the healthcare provider from circumventing this reimbursement process and seeking a claim for its full bill directly from the third party.  Ark. Code Ann. § 20-77-104(a) states "it is the specific intent of this section... to prohibit any provider of medical services who participates in the Arkansas Medicaid program to bill or receive payment from any Medicaid-eligible person, his or her spouse, relative, guardian, or any other prospective payee for services or considerations for which payment is either payable in full or has been paid in full by the program."

20.     Further, Ark. Code Ann. § 20-77-104(c) states "it is the intent of this section... to prohibit any payment by any Medicaid-eligible person or his or her payee in excess of the rate or

fee for service that the medical services provider has agreed to accept as payment in full as evidenced by written agreement or contract to participate in the program."

21.     The statutory scheme enacted by the Arkansas legislature is consistent with the Federal statutes enacting the Medicaid program.  Federal law provides that Medicaid providers must accept payment from Medicaid as payment in full.  Federal law mandates that a service provider "may not seek to collect from the individual (or any financially-responsible relative or representative of that individual) payment of an amount for that service."  42 U.S.C. § 1396(a)(25)(C).

22.     In addition, 42 C.F.R. § 447.15 (2012), entitled "Acceptance of State Payment as Payment in Full," requires that a State "must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency plus any deductible, coinsurance, or copayment required by the Plan to be paid by the individual."

23.     To the extent any of the Defendants rely upon any State law or common law inconsistent with the requirements of the Arkansas statutes and Federal statutes and regulations cited above enacting the Medicaid program, such law is preempted by Federal law.  *See Abbott v. Banner Health Network*, 341 P.3d 478 (2014); *see also Spectrum Health*, 410 F.3d 304 (6th Cir. 2005); *Miller v. Gorski Waldyslaw Estate*, 547 F.3d 273 (5th Cir. 2008).

24.     Survival Flight has entered into a contract to participate in the Arkansas Medicaid Assistance Program in which Survival Flight has agreed to comply with the applicable Arkansas statutes with respect to ensuring that Medicaid beneficiaries are not billed directly for Medicaid-covered services and that the beneficiaries are not charged in excess of the rate agreed to by Medicaid for the medical services provided.

25.   As administered in Arkansas, the Medicaid statutes, provider agreements, and Contracts for Participation implement a system whereby medical care providers are required to submit bills for covered services to Medicaid for reimbursement. Reimbursement is based upon the contractually agreed-upon rate which, in most circumstances, is less than the full charge actually billed for the service provided by the healthcare provider.

26.   Once Medicaid has paid the provider for the service, Medicaid has a right of reimbursement against any third party liability insurance carriers or other "health insurers" as set forth in Ark. Code Ann. § 20-77-301, *et seq*. In fact, automobile liability insurance carriers are specifically defined as "health insurers" for purposes of this section. *See* Ark. Code Ann. § 20-77-306(a)(1)(A).

27.   Nothing in the applicable statutes, the provider manuals, or the Contract to Participate in the Medicaid program permit healthcare providers such as Survival Flight or its collection agents acting on its behalf to circumvent this process and seek a claim for reimbursement directly from the "health insurer."

28.   In fact, Survival Flight has entered into a provider agreement with Arkansas Medicaid in which it has specifically agreed "to accept payment from Medicaid as payment in full for a covered service, and to make no additional charges to the beneficiary or accept any additional payment from the beneficiary except cost share (co-pay or deductible amounts) established by the Medicaid program." *See* Exhibits 5 and 6.

29.   A lien asserted by Survival Flight herein, such as the one asserted against Lacey Robinett, is a claim created by application of Arkansas statute, Ark. Code Ann. § 18-46-101, *et. seq*. This statutory framework gives rise to a lien "for the value of the service rendered and to be rendered by the practitioner, nurse, hospital, or ambulance service provided <u>to a patient</u> . . . for

6

the relief and cure of an injury suffered through the fault or neglect of someone other than the patient . . . on any claim, right of action, and money to which the patient is entitled because of that injury . . . " Ark. Code Ann. § 186-46-104. Thus, the statute creates a lien against the patient and the patient's cause of action. The lien, therefore, is not an effort to pursue payment from a third party, but rather an effort to recover directly from the patient and Medicaid beneficiary by impairing the beneficiary's rights.

30.     Plaintiff and Class Members are intended third party beneficiaries of the Provider Agreement and are the intended and protected beneficiaries of the regulatory scheme authorizing this contract.

31.     Thus, to ensure this statutory scheme is followed, and to prevent healthcare providers from billing charges to Medicaid-eligible patients for charges in excess of that to which they would be entitled to receive from Medicaid, providers are required to submit all bills to Medicaid for payment, and then assign to Medicaid their right to payment or reimbursement from third party sources so that Medicaid can recover its payment.

32.     The practice of accepting the Medicaid reimbursement and then seeking to collect the remaining differencing between the "standard" charge and the Medicaid reimbursement is known as "balance billing" which is clearly prohibited by Federal and State law. The purpose of this practice is to recover amounts directly from the patient which exceed that to which the providers are entitled to recover from Arkansas Medicaid.

33.     The lien asserted by Survival Flight, such as the one asserted against Ms. Robinett, is a bill to receive payment from a Medicaid-eligible person for services for which payment is payable by the Medicaid program.

34. The attached Exhibits 2-4 by Survival Flight evidence a policy and practice by Survival Flight to disregard applicable Arkansas and Federal law with respect to billing Medicaid for Medicaid-eligible services provided to Medicaid beneficiaries.

35. Instead, Survival Flight, in circumstances involving victims of motor vehicle collisions for which payment from a third-party liability carrier is apparent, insists upon asserted statutory liens against the Medicaid beneficiary in order to recover the "standard amount" for charged services, which greatly exceed the negotiated rates Survival Flight has agreed to accept from Medicaid. Moreover, Survival Flight submits the bill to Medicaid to receive the negotiated Medicaid reimbursement rate, but does not accept payment from Medicaid as payment in full for the bill, instead submitting the bill for the difference between the standard charge and the negotiated reimbursement rate to the patient directly for payment.

36. As set forth below, this policy and practice by Survival Flight not only violates the Arkansas and Federal Medicaid statutes, but constitutes numerous violations of Arkansas law.

### CLASS ACTION ALLEGATIONS

37. Pursuant to Ark. R. Civ. P. 23, Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated. This action satisfies the Ark. R. Civ. P. 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, and the Rule 23(b) requirements of predominance and superiority.

38. The proposed class which Plaintiff seeks to represent is defined as follows:

a. All persons who were Arkansas Medicaid-eligible beneficiaries and received Medicaid-covered services from Survival Flight whose bills were not submitted to Arkansas Medicaid for payment.

8

b.      All persons who were Arkansas Medicaid-eligible beneficiaries and received Medicaid-covered services from Survival Flight who received bills from Survival Flight for the difference between Survival Flight's standard charge and the Medicaid reimbursement.

c.      All persons who were Arkansas Medicaid-eligible beneficiaries and received Medicaid-covered services from Survival Flight who were forced to pay, had paid on their behalf, or are being asked to make payment for charges for medical care and services in an amount that violates Survival Flight's admission Assignment Agreement and/or exceeds the co-payment, co-insurance, and/or deductible obligations for said persons and/or the terms of the Provider Agreement to treat such persons pursuant to the terms of such agreement.

d.      All persons who were Arkansas Medicaid-eligible beneficiaries and received Medicaid-covered services from Survival Flight who were not refunded amounts received by Survival Flight in excess of amounts due for medical care and services provided by Survival Flight to said persons

e.      All persons who are Arkansas Medicaid-eligible beneficiaries and received Medicaid covered services from Survival Flight for injuries sustained in an incident who did not receive the benefit of collection by Survival Flight as an attorney-in-fact for medical services from a source most favorable to the patients among the sources known to Survival Flight acting as attorney-in-fact.

f.      All persons who are Medicaid-eligible beneficiaries and received Medicaid covered services from Survival Flight for injuries sustained in an incident for which a third-party was potentially liable whose subsequent claim against that third party was impaired by the assertion of a lien for a charge for services in an amount in excess of the agreed Medicaid reimbursement rate.

g.     All persons who were Arkansas Medicaid-eligible beneficiaries and received Medicaid-covered services from Survival Flight for injuries sustained in an incident for which first party insurance proceeds for personal injury protection benefits, med-pay benefits, underinsurance benefits, uninsurance benefits, or the like, whose claim for those benefits was impaired by the assertion of a lien for an amount in excess of the agreed Medicaid reimbursement rate.

h.     All persons who were Arkansas Medicaid-eligible beneficiaries and received Medicaid-covered services from Survival Flight who were sent collection notices by Survival Flight that contained misleading statements of facts and misrepresentations regarding their accounts with Survival Flight.

39.     Excluded from the class are:

a.     All persons who receive no monies from any third party against whom their liability claims are pursued, either through settlement, judgment, or otherwise.

b.     All persons whose bills from Survival Flight were ultimately paid in full by Arkansas Medicaid and accepted by Survival Flight as payment in full;

c.     All persons who were only billed by Survival Flight for a deductible, coinsurance, or co-payment as permitted by the Medicaid Provider Agreement.

d.     Survival Flight and its affiliates, officers, directors, agents, and employees;

e.     Members of the judiciary and their staff to whom this action is assigned;

f.     Plaintiff's counsel.

Plaintiff reserves the right to amend the definition of her Class as discovery in the case reveals whether the case should be so amended, including the addition of appropriate sub-classes

or the expansion of the class to Medicare patients and/or patients residing in other states whose residents Survival Flight routinely treats.

40.     The members of this class are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes that hundreds, if not thousands, of Arkansas citizens geographically dispersed across Arkansas have been damaged by Defendant's actions. The names and addresses of the members of the class are identifiable through records maintained by the Defendant, and Class Members may be notified of the pendency of this action by mail, published, and/or electronic notice.

41.     Common questions of law and fact exist as to all Class Members and predominate over any questions affecting only individual Class Members. The questions of law and fact common to the class, include, but are not limited to:

a.     Whether Arkansas law permits the Defendant to "balance bill" against Medicaid-eligible beneficiaries, or to collect directly from those beneficiaries.

b.     Whether the Defendant's efforts to collect bills for Medicaid beneficiaries constitutes an effort to bill and receive payment from Medicaid eligible persons as prohibited by Ark. Code Ann. § 20-77-104;

c.     Whether the Defendant's efforts to collect its full bill from Medicaid beneficiaries constitutes an effort to recover payment from a Medicaid-eligible person in excess of the rate for services that it has agreed to accept as payment in full from Arkansas Medicaid;

d.     Whether Defendant has been unjustly enriched by its policies and practices by retaining money that should not have been received from the Plaintiff and other Class Members as described herein;

      e.      Whether Defendant has converted funds to which Medicaid beneficiaries are entitled to possess;

      f.      Whether Defendant has breached its contract with Arkansas Medicaid thus depriving Arkansas Medicaid beneficiaries of intended contractual benefits;

      g.      Whether Defendant breached its assignment agreement with Lacey Robinett by refusing to accept Medicaid's reimbursement as payment in full of her bill;

      h.      Whether Arkansas law permits the Defendant to assert liens against Medicaid-eligible beneficiaries in addition to or in lieu of submitting bills for Medicaid-covered services to Arkansas Medicaid;

      i.      Whether Defendant's efforts to enforce statutory liens against Medicaid beneficiaries' causes of action against third parties constitutes an effort to bill and receive payment for Medicaid-eligible persons as prohibited by Ark. Code. Ann. § 20-77-104;

      j.      Whether Defendant's efforts to enforce statutory liens against the Medicaid beneficiaries' causes of action against third parties constitutes an effort to recover payment from a Medicaid-eligible person in excess of the rate for services that they have agreed to accept as payment in full from Arkansas Medicaid.

      k.      Whether Plaintiff or other Class Members have been damaged by the Defendant's breaches, as alleged herein and, if so:

           1.      What is the nature and extent of those damages; and

           2.      What relief should be awarded to Plaintiff and other Class Members.

42.      Plaintiff's claims are typical of the claims of all Class Members, as they are all similarly affected by Defendant's custom and practice of unlawful and unjust conduct, and the

claims are based on such conduct.  Further, Plaintiff's claims are typical of the claims of all

Class Members because her claims arise from the same underlying facts and are based on the

same factual and legal theories.  Plaintiff is no different in any material respect from any other

member of the class.

43.     Plaintiff and her counsel will fairly and adequately protect the interests of the

members of the class.  Plaintiff's interests do not conflict with the interest of the class she seeks

to represent.  Plaintiff has retained counsel who are competent and experienced in class action

litigation, as well as including insurance and healthcare-related cases.  Plaintiff and her counsel

will prosecute this action vigorously.

44.     The class action is superior to all other available methods for the fair and efficient

adjudication of this controversy.  Joining all Class Members in one action is impracticable and

prosecuting individual actions is not feasible.  The size of the individual claims is likely not large

enough to justify filing a separate action for each claim.  For many, if not most Class Members,

the class action is the only procedural mechanism that will afford them an opportunity for legal

redress and justice.  Even if Class Members had the resources to pursue individual litigation, that

method would be unduly burdensome to the Courts in which such cases would proceed.

Individual litigation exacerbates the delay and increases the expense for all parties, as well as the

Court system.  Moreover, individual litigation could result in inconsistent adjudications of

common issues of law and fact.

45.     In contrast, a class action will minimize case management difficulties and provide

multiple benefits to the litigation parties, including efficiency, economy of scale, unitary

adjudication with consistent results and equal protection of the rights of the Plaintiff and Class

Members. These benefits would result from the comprehensive and efficient supervision of the litigation by a single Court.

46.    Class certification is further warranted because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief for corresponding declaratory relief is appropriate respecting the class as a whole.

## COUNT I – BREACH OF CONTRACT

47.    Paragraphs 1-46 are incorporated herein by reference as set forth word for word.

48.    Upon acceptance of the patient by Survival Flight, and as a condition of her treatment with Survival Flight, Lacey Robinett assigned Survival Flight all rights belonging to her as an Arkansas Medicaid beneficiary. This included an assignment of benefits authorizing Survival Flight to bill Medicaid directly and to receive direct reimbursement from Medicaid for medical services provided to Ms. Robinett. *See* Exhibit 1 ("Assignment Agreement").

49.    The Assignment Agreement attached hereto as Exhibit 1 assigns to Survival Flight all of Lacey Robinett's rights to payment for medical bills as a Medicaid beneficiary.

50.    As a Medicaid beneficiary, Arkansas and Federal law prohibit medical care providers such as Survival Flight from billing Medicaid beneficiaries directly for bills which are covered services under the Medicaid Provider Agreement. *See* 42 U.S.C. § 1396a(a)(25)(C); 42 C.F.R. § 447.15(2012); *Accord with* Ark. Code Ann. § 22-77-104. This statutory condition was accepted by Survival Flight when it accepted Lacey Robinett's assignment of rights under the Assignment Agreement.

51.    Likewise, Arkansas and Federal law prohibit medical care providers such as Survival Flight from billing Medicaid beneficiaries in excess of the agreed Medicaid

reimbursement rate. *See id.* This statutory condition was accepted by Survival Flight when it

accepted Lacey Robinett's assignment of rights under the Assignment Agreement.

52.     Rather than adhering to its contractual responsibility to bill Medicaid for the

treatment provided to Lacey Robinett, Survival Flight directly billed and collected from its

patients amounts which exceeded the agreed upon Medicaid reimbursement rates.  Survival

Flight, therefore, breached its contract with Lacey Robinett by opting to collect from Lacey

Robinett directly a sum of money that substantially exceeded the Medicaid rate for the services

received.

53.     Survival Flight and Lacey Robinett had a valid and enforceable contract under the

Assignment Agreement.

54.     The contract assigned to Survival Flight all rights belonging to Lacey Robinett as

an Arkansas Medicaid beneficiary.  Lacey Robinett's status as a Medicaid beneficiary not only

authorizes payment for all Medicaid-covered services by Arkansas Medicaid, but prohibits

healthcare providers participating in the Medicaid program from billing patients such as Lacey

Robinett for these services.

55.     Lacey Robinett did what the contract required of her by assigning her Medicaid

rights to Survival Flight and by providing Survival Flight all information needed to submit her

bills to Medicaid.

56.     Survival Flight did not do what the contract required of it by billing Lacey

Robinett directly for the inflated charges for these services which greatly exceeded the agreed

upon Medicaid reimbursement rate and also "balance billing" for amounts in excess of the

negotiated Medicaid rate <u>after</u> it received payment from Medicaid.  Defendant's actions

constitute a breach of contract, resulting in financial harm to Lacey Robinett and other Class Members as outlined herein.

57.     The Defendant breached the contract created by the Assignment Agreement with Lacey Robinett and have caused the Plaintiff and other Class Members damages as a result.

58.     In addition, in the performance of contractual obligations, Arkansas law implies a promise between the parties that they will act in good faith and deal fairly in performing and enforcing their obligations under the contract.  Stated another way, the law implies a promise between the parties that they will not do anything to prevent, hinder, or delay the performance of the contract.

59.     In breaching its contract with Lacey Robinett, Survival Flight has taken affirmative actions to prevent, hinder, and delay the performance of its contract with Ms. Robinett and the Class Members.  Such actions are additional evidence of Defendants' breach of the contract.

60.     As a result of the Defendant's unlawful breach of contract, the Plaintiff and the Class Members have been damaged for an amount more fully set forth below and for which the Defendant is jointly and severally liable.

### COUNT II – BREACH OF CONTRACT AS THIRD PARTY BENEFICIARY

61.     Paragraphs 1-60 are incorporated herein by reference as set forth word for word.

62.     Survival Flight and Arkansas Medicaid entered into a contract attached hereto as Exhibit 5.  The terms of that contract require that Survival Flight comply with all billing rules and regulations as outlined in the applicable provider manuals, Arkansas Medicaid statutes, and other laws implementing the Medicaid program in the State of Arkansas.

63.     The contract, which incorporates by reference all applicable Medicaid laws and regulations implementing the Medicaid program in Arkansas, clearly is intended to benefit Medicaid recipients such as Ms. Robinett and other Class Members under the terms of the contract.

64.     The contract required Survival Flight to bill all Medicaid covered services for Medicaid-eligible individuals such as Ms. Robinett and other Class Members to Medicaid for payment in lieu of billing the patient directly for its charges or billing any charges in excess of the agreed upon rate between Survival Flight and Medicaid for these services.

65.     Ms. Robinett did what the contract required of her by assigning all rights belonging to her as a Medicaid-eligible beneficiary to Survival Flight in exchange for Survival Flight's providing services to her.

66.     Survival Flight did not do what the contract required of it by, instead of sending its bill for services provided to Ms. Robinett to Medicaid for payment, asserting a lien which encumbered Ms. Robinett's third party liability claim and ultimately acted as a bill directly sent to Ms. Robinett for services provided to her in an amount in excess of that which was agreed upon between Survival Flight and Medicaid for these Medicaid-eligible services, and also "balance billing" for amounts in excess of the negotiated Medicaid rate after it received payment from Medicaid.

67.     As such, Defendant has breached the contract with Arkansas Medicaid and has caused the Plaintiff and other Class Members damages as a result.

68.     In addition, in the performance of contractual obligations, Arkansas law implies a promise between the parties that they will act in good faith and deal fairly in performing and enforcing their obligations under the contract. Stated another way, the law implies a promise

17

between the parties that they will not do anything to prevent, hinder, or delay the performance of the contract.

69.     In breaching its contract with Arkansas Medicaid, Survival Flight has taken affirmative actions to prevent, hinder, and delay the performance of its contract to the detriment of third party beneficiaries such as Ms. Robinett and the Class Members.  Such actions are additional evidence of The Med's breach of the contract.

70.     As a result of the Defendant's unlawful breach of contract, the Plaintiff and the Class Members, as third party beneficiaries, have been damaged for an amount more fully set forth below and for which the Defendant is jointly and severally liable.

## COUNT III - VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT

71.     Paragraphs 1-70 are incorporated herein by reference as set forth word for word.

72.     Plaintiff and Class Members are "persons" entitled to protection under the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, *et. seq.*

73.     Defendant has engaged in unconscionable and false deceptive acts and practices of business as described above.  Despite being aware that Plaintiff is a Medicaid-eligible beneficiary, the Survival Flight has not only submitted bills for Ms. Robinett's service to Medicaid and accepted Medicaid's payment, it attempted to bill the balance directly to Ms. Robinett.

74.     Defendant, through its agents and employees, has engaged in unconscionable and false deceptive acts and practices of business as described above.  Despite being aware that Plaintiff is a Medicaid-eligible beneficiary, the Defendant has not only submitted bills for Ms. Robinett's service to Medicaid and accepted Medicaid's payment, it attempted to bill the balance

directly to Ms. Robinett.  Survival Flight also improperly asserted a lien and impaired Ms.

Robinett's third party claim despite knowing she was a Medicaid beneficiary.

75.     Defendant knowingly engaged in a scheme and artifice to defraud the Plaintiff

and Class Members, made untrue statements of facts, omitted to state material facts necessary in

order to make previous factual statements, in light of the circumstances in which they were

made, not misleading, and engaged in acts and practices in courses of business which operated as

a fraud and deceit upon the Plaintiff and Class Members.  The actions are unconscionable, false,

and deceptive in the practice of business and, thus, they are in violation of Ark. Code Ann. § 4-

88-107.

76.     Defendant's conduct proximately caused Plaintiff and Class Members to suffer

damages as set forth herein, as well as reasonable attorney's fees and costs of litigation pursuant

to Ark. Code Ann. § 4-88-113(f).

77.     The improper actions of the Defendant has caused the Plaintiff and Class

Members to suffer damages in excess of that required for federal diversity jurisdiction.

### COUNT IV - UNJUST ENRICHMENT

78.     Paragraphs 1-77 are incorporated herein by reference as set forth word for word.

79.     Defendant's conduct, as described above and as more specifically alleged in this

count, also constitutes unjust enrichment, for which Plaintiff and other Class Members are

entitled to pursue equitable remedies in accordance with Arkansas law.

80.     By "balance billing" and asserting unlawful liens against Medicaid beneficiaries

as more fully described above.  Defendant has received payment in excess of that to which it was

legally entitled as a result of its Medicaid provider agreements.

81.     Defendant's actions were unjust and inequitable in that it received far more than that which it was entitled to receive for its services as required by its contract with Arkansas Medicaid, the Medicaid Provider Manuals, and Arkansas statutes and regulations.

82.     Defendant's actions were unjust and inequitable in that it failed to disclose to Plaintiff and other Class Members that it was required to accept as payment in full payment from Medicaid for the discounted rate for the services provided to these Medicaid beneficiaries for these covered services.

83.     Defendant's actions were unjust and inequitable in that Defendant concealed from Plaintiff and other Class Members that it was receiving more than it was legally permitted to receive.

84.     Defendant's actions were unjust and inequitable in that Defendant concealed from Plaintiff and other Class Members that it was not permitted to bill Medicaid beneficiaries direct for Survival Flight's services or to "balance bill" Medicaid benefiaries.

85.     Defendant's actions were unjust and inequitable and the Defendant owed a fiduciary duty to, and/or had a special relationship with, Plaintiff and other Class Members.

86.     As a result of Defendant's unjust and inequitable actions, Defendant was unjustly enriched by receiving something of value to which it was not entitled.  More specifically, Defendant retained, and had the beneficial use of, money that Plaintiff and other Class Members were entitled and should have received.

87.     As a result of its unjust and inequitable actions, Defendant was unjustly enriched by receiving money under such circumstances that, in equity and good conscious, it ought not retained.

88.     In light of the foregoing, Plaintiff and other Class Members are entitled to restitution and other equitable relief.

## COUNT V - CONVERSION

89.     Paragraphs 1-88 are incorporated herein by reference as set forth word for word.

90.     The Defendant intentionally took and exercised dominion and control over funds to which Plaintiff and Class Members were entitled by asserting claims against their third party liability claims which prevented them from receiving settlement funds to which they were otherwise entitled.

91.     The Defendant intentionally took and exercised dominion and control over funds to which the Plaintiff and Class Members were entitled to retain by billing and collecting from them monies to which Survival Flight was not lawfully entitled to recover in violation of the Plaintiff's and Class Members' rights.

92.     The Defendant's actions as described above constitute a conversion of the funds to which the Plaintiff and Class Members were entitled to possess.

93.     As a result of the Defendant's unlawful conversion of Plaintiff's funds, the Plaintiff and Class Members have been damaged in an amount more fully set forth below.

## COUNT VI – BREACH OF FIDUCIARY DUTY

94.     Paragraphs 1-93 are incorporated herein by referenced as set forth word for word.

95.     As a result of the relationship between Plaintiff, the Class Members, and Survival Flight, including Survival Flight's role as Attorney-In-Fact as the assignee of Plaintiff's Medicaid beneficiary rights under the Assignment Agreement, a fiduciary relationship exists between the Plaintiff, the Class Members, and Survival Flight.

96. Among the fiduciary duties owed by Defendant to Plaintiff and members of the Class is the duty to act on Plaintiff's behalf and in Plaintiff's best interests in seeking payment from available sources from Medicaid which was available to Plaintiff and members of the Class.

97. Defendant breached its fiduciary duties by, among other things, communicating false information to the Plaintiff and Class Members regarding the amount of charges owed for medical care and services provided by Survival Flight, wrongfully, deceptively, and improperly charging Plaintiff and Class Members for medical care and treatment that greatly exceeded the agreed-upon Medicaid reimbursement rates, failing to refund amounts received in excess of the amounts allowed pursuant to the Medicaid Provider Agreement, pursuing collection policies and practices which put the Defendant's financial interests ahead of the Plaintiff's and those of the Class Members', failing to pursue collection from sources favorable to Plaintiff and Class Members, and altering and modifying its billing and charges to enable collection from sources more favorable to Survival Flight but less favorable to the Plaintiff and Class Members than otherwise were available.

98. The Defendant breached its fiduciary duties owed to the Plaintiff and Class Members in a manner that sought to benefit the Defendant and did, in fact, benefit Defendant.

99. The Defendant's breach of fiduciary duties owed to the Plaintiff and Class Members proximately caused damages to the Plaintiff and Class Members as more fully set forth herein.

## COUNT VII – ABUSE OF PROCESS

100. Paragraphs 1-99 are incorporated herein by referenced as set forth word for word.

101. By asserting a lien for services provided to Medicaid beneficiaries for payment and instead asserting a lien which encumbered the Plaintiff and Class Members' claims, Survival Flight's actions ultimately _____ bills sent directly to Medicaid beneficiaries for services provided to them in an amount in excess of that which was agreed upon between Survival Flight and Medicaid for these Medicaid-covered services. Survival Flight has, therefore, set in motion legal procedures against the Plaintiff and Class Members.

102. By accepting payment from Medicaid and continuing to assert a lien for the balance difference between the standard charge and the Medicaid reimbursement rate, Survival Flight's lien ultimately acted as a bill sent directly to these beneficiaries for services provided to them in an amount in excess of that which was agreed upon between Survival Flight and Medicaid for these covered services. Survival Flight has, therefore, set in motion legal procedures against the Plaintiff and Class Members.

103. The lien asserted by Survival Flight constitute "judicial process" as that term is defined under Arkansas law.

104. In filing and asserting liens for unsubstantiated and meritless amounts against the Plaintiff and Class Members in their claims, Survival Flight intended to pervert the legal procedure to accomplish its true alternative purpose of extorting and coercing the Plaintiff and Class Members to pay money to it even though it had no right to seek such payment.

105. The filing and assertion of unsubstantiated and meritless liens against the Plaintiff and Class Members in order to extort and coerce these payments constitutes a willful act perpetrated in the use of process which is not proper in the regular conduct of legal proceedings.

106. As a result of Survival Flight's abuse of process, the Plaintiff and Class Members have suffered damages more fully set forth below.

23

107.    Plaintiff demands a trial by jury on all issues.

WHEREFORE, Plaintiff Lacey Robinett, Individually and On Behalf of Other Similar

Situated, request that the Court grant the following relief:

    a.      Certify that this lawsuit may be prosecuted as a class action pursuant to Rule 23 of the Arkansas Rules of Civil Procedure;

    b.      Appoint Plaintiff and Plaintiff's counsel to represent the class;

    c.      Declare that the Defendant has breached its contract with Lacey Robinett and Arkansas Medicaid;

    d.      Declare that the Defendant has violated the Arkansas Deceptive Trade Practices Act;

    e.      Declare that the Defendant has been unjustly enriched as a result of its wrongful conduct;

    f.      Declare that the Defendant has improperly converted funds belonging to the Plaintiff and the Class;

    g.      Declare that Defendant has breached its fiduciary duty to Plaintiff;

    h.      Declare that Defendant has illegally abused process in Arkansas;

    i.      Award the Class damages in an amount equal to all amounts improperly billed to the Class and recovered through filing liens;

    j.      Award the Class pre-judgment and post-judgment interest;

    k.      Enjoin the Defendant from engaging in the unlawful and unjust conduct complained of herein;

    l.      Award the Class reasonable attorney's fees and costs; and

    m.      Award the Class any and all other additional relief to which the Plaintiff and other Class Members may be entitled.

Respectfully Submitted,

Brandon W. Lacy #03098
LACY LAW FIRM
630 S. Main Street
Jonesboro, Arkansas 72401
870-277-1144

-and-

Jeffery O. Scriber, #2006526
JEFF SCRIBER, P.A.
324 S. Main Street
Jonesboro, AR 72401
870-336-0155

Attorneys for Plaintiff

By: _____
      Brandon W. Lacy #03098

## Past Medical History

| MEDICATION ALLERGIES | Generic Name | Description |
|---|---|---|
| dermabond | | |

| Patient Medications | Generic Name | Dosage |
|---|---|---|
| Valium | diazepam (anxiety, muscle relaxant, seizure) | |

| Medical Surgery History |
|---|
| Cancer, Asthma |

| History Primarily Obtained From | Pregnancy | Advanced Directives | | Practitioner Name |
|---|---|---|---|---|
| | | | | |

## Assessment Exam

16:06 **Mental Status:** Normal Mental Status for Patient, ; **Neuro:** Normal, ; **Eyes: R:** 4-mm, Reactive, ; **L:** 4-mm, Reactive, ; **Skin:** Normal, ; **Head/Face:** Pain/tenderness, ; **Neck:** Pain/tenderness, ; **Chest/Lungs:** Normal Chest Assmt, Normal, Clear & Equal Breath Sounds, ; **Heart:** Normal, ; **LUQ:** Normal (Soft, Non-Tender), ; **LLQ:** Normal (Soft, Non-Tender), ; **RUQ:** Normal (Soft, Non-Tender), ; **RLQ:** Normal (Soft, Non-Tender), ; **GU:** Normal, ; **Cervical:** Tender Spinous Process, ; **Thoracic(back):** Normal (No Pain or Deformities), ; **Lumbar:** Normal (No Pain or Deformities), ; **Extremities: Upper R:** Normal, ; **Upper L:** Normal, ; **Lower R:** Normal, ; **Lower L:** Normal, ;

## Patient Condition

**Chief Complaint:** MVA, hematoma to forehead X 45 Minutes

**Secondary Complaint:** dizzy, blurred vision X 45 Minutes

**Alcohol/Drug Use:** No Apparent Alcohol/Drug Use

| Injury Onset | Injury Cause | Injury Mechanism | Injury Intent | Ht. of Fall |
|---|---|---|---|---|
| 15:14 12/26/2015 | Motor Vehicle Traffic Accident | Blunt | Unintentional | |

| Primary Symptom | Other Associated Symptoms |
|---|---|
| Pain | Nausea/Vomiting, Pain, Headache |

## Patient Vitals

| Time | B/P | Pulse | Rhythm | Resp. | Effort | SpO2 | SpO2 Qual. | EtCO2 | GCS | Pain | Stroke Scl | PTA | B.G. | RTS | Limb | Patient Position |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 16:16 | 121/80 | 112 | | 20 | Normal | 96 | Rm. Air | | 15 | 5 | LASS - | | | 12 | Right Arm | Supine |
| 16:21 | 130/85 | 108 | | 20 | Normal | 96 | Rm. Air | | 15 | 7 | LASS - | | | 12 | Right Arm | Supine |
| 16:26 | 147/99 | 114 | | 20 | Normal | 95 | Rm. Air | | 15 | 8 | LASS - | | | 12 | Right Arm | Supine |
| 16:32 | 134/84 | 108 | | 20 | Normal | 95 | Rm. Air | | 15 | 4 | LASS - | | | 12 | Right Arm | Supine |
| 16:36 | 133/86 | 104 | | 20 | Normal | 95 | Rm. Air | | 15 | 3 | LASS - | | | 12 | Right Arm | Supine |
| 16:41 | 124/67 | 104 | | 20 | Normal | 95 | Rm. Air | | 15 | 3 | LASS - | | | 12 | Right Arm | Supine |
| 16:46 | 123/88 | 104 | | 22 | Normal | 97 | Rm. Air | | 15 | 3 | LASS - | | | 12 | Right Arm | Supine |
| 16:51 | 129/85 | 109 | | 22 | Normal | 97 | Rm. Air | | 15 | 3 | LASS - | | | 12 | Right Arm | Supine |


EXHIBIT

## Patient Vitals

| Time | B/P | Pulse | Rhythm | Resp. | Effort | SpO2 | SpO2 Qual. | EtCO2 | GCS | Pain | Stroke Scl | PTA | B.G. | RTS | Limb | Patient Position |
|------|-----|-------|--------|-------|--------|------|-----------|-------|-----|------|-----------|-----|------|-----|------|-----------------|
| 16:56 | 128/73 | 112 | | 22 | Normal | 97 | Rm. Air | | 15 | 3 | LASS - | | | 12 | Right Arm | Supine |
| 17:01 | 141/95 | 114 | | 22 | Normal | 97 | Rm. Air | | 15 | 6 | LASS - | | | 12 | Right Arm | Supine |
| 17:06 | 126/71 | 104 | | 22 | Normal | 97 | Rm. Air | | 15 | 5 | LASS - | | | 12 | Right Arm | Supine |

## ECG Monitor

| Time | ECG Type | ECG Lead | ECG Interpretation | ECG Ectopy | Cause For Change |
|------|----------|----------|--------------------|------------|------------------|
| | | | | | |

## Procedures and Treatments

| Time | Crew | Name | Location | Size of Equipment | Attempts | Response | Success | Comments |
|------|------|------|----------|-------------------|----------|----------|---------|----------|
| | ** | Venous Access-Extremity | | 20 | 1 | | | |
| | ** | Spinal Immobilization - Long Back Board | | | 1 | Unchanged | | |
| 16:06 | KE | Assessment-Adult | | | 1 | Unchanged | Yes | |
| 16:09 | MH | Patient Loaded-Helicopter Hot-Load | | | 1 | Unchanged | Yes | |
| 16:50 | MH | Radio Report to ER | | | 1 | Unchanged | Yes | |
| 17:03 | MH | Patient Off-Loaded | | | 1 | Unchanged | Yes | |

## Intubation Confirmation

| Time | Preoxy. | Gastric Sounds | Lung | L/R | Chest | L/R | Wave Form | ETCO2 Numeric | ETCO2 Color | Verify/Tube | EDD | Draws Back EDD Inflates | EDD | Misting | POGO Score | Secured | Tube Depth At | Depth | Tube size | Verify X-Ray | MD/RN Verify Placement |
|------|---------|----------------|------|-----|-------|-----|-----------|---------------|-------------|-------------|-----|------------------------|-----|---------|------------|---------|---------------|-------|-----------|--------------|------------------------|
| | | | | | | | | | | | | | | | | | | | | | |

## Medication Administered

| Time | Crew | Medication | Route | Dosage | Response | PTA | Comments |
|------|------|-----------|-------|--------|----------|-----|----------|
| 16:07 | KE | Fentanyl | Intravenous | 100 MCG | Improved | No | |
| 16:07 | KE | Ondansetron (Zofran) | Intravenous | 4 MG | Improved | No | |
| 16:15 | KE | Ondansetron (Zofran) | Intravenous | 4 MG | Improved | No | |
| 16:20 | KE | Promethazine HCl (Phenergan) | Intravenous | 25 MG | Improved | No | |
| 16:45 | KE | Fentanyl | Intravenous | 100 MCG | Improved | No | |

## Physical Assessment

| Front | Left |
|-------|------|
| | |

## Physical Assessment



| Right | Back |
|-------|------|




### Injury Details

| Injury # | Injury Site | Injury Detail |
|----------|-------------|---------------|
| 1 | Head | Soft Tissue Swelling/Bruising *hematoma above L eye* |

### Patient Safety Equipment Used

Protective Safety Belt

### Patient Transport/Positioning

| Patient Moved To Ambulance | Patient's Position In Transport | Patient Moved From Ambulance |
|----------------------------|--------------------------------|------------------------------|

| Call Type and Location | Call Disposition | Response Times and Mileage | | |
|---|---|---|---|---|
| **Call Type:** Traffic/Transportation Accident | **Disposition:** Treated, Transported by Air (Critical Care) | **1st Resp. Arr.:** | | |
| **Resp. Mode:** Emergency Response | | **PSAP:** 15:28 | **Incident #:** 12814 | |
| **Urgency:** Immediate | **Resp. Mode:** | **Disp.** 15:28 | **Call Sign:** Survival Flight 4 | |
| **Response:** 911 Response | **Destination:** Regional Medical Center at Memphis, 877 Jefferson Ave, Memphis, TN 38103 | **Notified:** | | |
| **Location:** Street or Highway | | **Unit Disp.:** 15:39 | **Veh. #:** 820SF | |
| **Address:** AR US 63 and Elm st Ravenden, Lawrence, AR 72459-8010 | | **Enroute:** 15:44 | **Start Miles:** 0.0 | |
| | | **At Scene:** 15:59 | **Scene Miles:** | **To Scene:** |
| | | **At Patient:** 15:59 | | |
| | **Dest. Determ.:** Closest Facility | **Depart:** 16:11 | | |
| | **Diverted From:** | **Arrive Dest:** 17:01 | **Dest. Miles:** 102.1 | **To Dest:** 102.1 |
| | **Response Delay:** None | **In Service:** 17:27 | | |
| | **Scene Delay:** None | **In Quarters:** 18:45 | **End Miles:** | **To End:** |
| | **Transport Delay:** None | **Cancelled:** | | |

| Unit Personnel | | |
|---|---|---|
| **Crew Member** | **Level of Certification** | **Role** |
| Eddington, Kathryn (KE) | Nurse | Primary Patient Caregiver |
| Horner, Marcus (MH) | EMT-Paramedic | Primary Patient Caregiver |

| Billing Information | |
|---|---|
| **Payment Method:** | **Work Related?** Not Applicable |

| Patient Occupation Information | |
|---|---|
| Occupation | Industry |

| Service-Defined Questions | |
|---|---|
| Is patient's dominant side affected? | No |

Patient Name: Robinette, Lacey

## Hospital/Receiving Agent Signature

**Hospital/Receiving Agent**

I acknowledge that the above patient was transferred to my care.

| I Agree | I Disagree | Not Applicable |
|---------|------------|----------------|

Signature

Printed Name   Debbie Marquis                    Date   12/26/2015 17:12

## Authorized Representative Signature

**Consent**

1. I consent to Survival Flight Inc., (Survival Flight Inc., hereinafter referred to as "Survival Flight") to provide transportation by air or otherwise for the purpose of obtaining medical care and/or treatment. 2. I consent to the provision of any and all medical treatment that may reasonably become necessary during such transportation. I further consent to the administering of any and all medical treatment and medications that may reasonably become necessary in the judgment of the physicians at the receiving hospital or health facility or the hospital's or facilities employees or independent contractors. 3. I fully understand that, barring any unforeseen circumstances, Survival Flight personnel will have access to emergency medicine physicians for online medical consultation during the transport. I understand that these physicians are not employees or agents of Survival Flight. The services provided by these physicians are independent from the services provided by the hospital(s). 4. I have been informed of and fully understand and assume the risks involved in helicopter transportation. These risks include aviation hazards, injury, permanent disability and death. I also understand that risks may be involved in the provision of any necessary medical care during my transportation to the above noted hospital or health care facility. 5. I have read or have had read to me, had an opportunity to ask questions, and fully understand this consent to transportation and treatment and that all blanks requiring completion were filled in before I affixed my signature. 6. I request and authorize direct payment to Survival Flight of any Medicare, Medicaid and/or other insurance benefits payable to me or on my behalf for services rendered by Survival Flight. At Provider's election, I also assign to Survival Flight all of my rights and interest in all such insurance benefits or proceeds, including but not limited to the right to appeal any denial of benefits or to file any lawfully authorized lien necessary to secure payment from any third party payer a third party's Insurer. I understand that I am financially responsible for the services rendered by Survival Flight and agree to immediately remit all payment received from insurance for those services. I agree to cooperate with Provider or its agent in collection any such benefits. This assignment shall not obligate provider to file any appeal or perfect any such lien and nothing herein shall relieve me from direct financial responsibility for any charges not paid by an insure. I understand and agree that I am personally responsible for Survival Flight's billed charges for the transport. 7. I authorize the disclosure and release of any medical information (including Protected Health Information) necessary to process claims for services rendered by Survival Flight, hospital or health care facility. 8. I hereby grant a lien to Survival Flight on, and assign to Survival Flight, all rights, title and interest in, any payment due from, or any settlement with, any responsible third party for the amount of Survival Flight's billed charges for the transport. 9. No guarantees or warranties have been made to me about the outcome of these services. 10. I understand that Survival Flight is not responsible for any moneys or valuables that I keep in my possession during the transport. 11. I acknowledge that Survival Flight has provided me with a copy of their Notice of Privacy Practices. 12. Authorization to Represent I authorize Survival Flight Inc as my representative to: (1) submit any and all appeals if my insurance company denies me benefits to which I am entitled, (2) submit any and all requests for benefit information from my insurance company, and (3) to the extent permitted by law, to initiate formal complaints to any state or federal agency that has jurisdiction over my insurance benefits. I fully understand and agree that I am responsible for full payment of Survival Flight's billed charges if my insurance company fails to pay 100 percent (100%) of my benefits within

ninety (90) days of any and all appeals or request for information. I also agree that, to the extent permitted by law, any civil penalty levied against my insurance company will be paid to Survival Flight for acting as my authorized representative.

| I Agree | I Disagree | Not Applicable |
|---------|-----------|----------------|

Signature

Verbal consent

| Printed Name | Lacy Robinette | Date | 12/26/2015 |
|---|---|---|---|
| Relationship | | Authorized Representative | Self |
| Address | | City | |
| State | | Postal Code | |
| Reason Pt. Unable to Sign | verbal consent | Phone Number | |

**Technician**

Implied Consent Statement

My signature below indicates that, at the time of service, the patient was physically or mentally incapable of signing, and that none of the authorized representatives were available or willing to sign on the patient's behalf.

| **I Agree** | I Disagree | Not Applicable |
|---------|-----------|----------------|

Technician

I acknowledge that I have provided the above assessments/treatments for this patient.

| I Agree | I Disagree | Not Applicable |
|---------|-----------|----------------|

Signature

X. Eddington RN

| Printed Name | Kathryn Eddington | Date | 12/26/2015 |
|---|---|---|---|
| Reason Pt. Unable to Sign | | | |

**Witness Signature**

Crew Member #2

I acknowledge that I have provided the above assessments/treatments for this patient.

| I Agree | I Disagree | Not Applicable |
|---------|-----------|----------------|

Patient Name: Robinette, Lacey

Signature

Printed Name   Marcus Horner                          Date   12/26/2015

**Valuables**

**Valuables:**

**Belongings Left:** At Destination with Staff (includes Aeromed. staff)



Name: _Lacey Robinette_     Date: _6/26/15_   Flight #: _12814_



ID: Patient 0720   12-26-2015   16:33:31   HR = 113bpm   RR = 26br/min   SpO2 = 95%   SpCO = ???%   SpMet = ???%   NIBP =184/84(102)mmHg   12-

25 mm/s
NF=60 Hz

Attach EKG's here



ID: Patient 0720   12-26-2015   17:00:47   HR = 99bpm   RR = 14br/min   SpO2 = 96%   SpCO = ???%   SpMet = ???%   NIBP =128/73(94)mmHg   12-2

2063271        5536399
Robinette, Lacey
SEX:F DOB: 08/09/1976  39Y Schroeppel
ADM: 12/26/2015
LOC: ERTRA              BBiD: 647510



**SURVIVAL FLIGHT**

## NOTICE OF CLAIM OF HEALTH CARE PROVIDER'S LIEN

Survival Flight Inc., an Arizona corporation authorized and licensed to do business in Missouri, providing emergency air medical transportation and located at 1400 US Highway 61 Festus, MO 63028-4100, asserts a health care provider's lien any and all benefits as pursuant to Missouri Revised Statutes Section 430.225.

1.  The name and address of the patient, as we believe it to be (and as it appeared in the records of the transmitting or receiving hospital) is:

    **Lacey Robinnett**
    **1503 Holley St**
    **Walnut Ridge, AR 72476**

2.  Survival Flight Inc. transported this patient on: December 26, 2015.

3.  The amount due for air medical transportation services is Fifty Thousand, Four Hundred Dollars and Sixty Cents ($50,400.60)

4.  To the best knowledge of the claimant, the names and addresses of all persons, firms of corporations and their insurance carriers claimed by claimant (patient) or his or her legal representative to be liable for damages arising from the injuries for which he or she received health care are:

    | | | |
    |---|---|---|
    | **Jeff Scriber PA**<br>**324 South Main**<br>**Jonesboro, AR 72401** | **The Marshall Law Firm**<br>**225 South Main St Ste102**<br>**Jonesboro, AR 72401** | **Lacey Robinette**<br>**1503 Holley St**<br>**Walnut Ridge, AR**<br>**72476** |

Survival Flight Inc., has, on this 19th day of February 2016, recorded the original of this Health Care Provider's Lien by certified mail, to the person(s), firm or corporation and the insurance carrier of each that are listed above as persons believed to be liable.

Marcie Keziah
Director of Patient Financial Services
Survival Flight Inc.
4824 E. Baseline Road, Suite 101
Mesa, AZ 85206-4677

**EXHIBIT**

2

# Jeff Scriber P.A.

## ATTORNEY AND COUNSELOR AT LAW

April 11, 2016

**Survival Flight**
304 Teaco Rd # A
Kennett, MO 63857

*via U.S Mail and facsimile*

Re:     Patient:     Lacey Robinett

To Whom It May Concern:

I represent your patient, Lacey Robinett. I am in receipt of the lien you filed against her for her outstanding balance. I'm attempting to get all of her medical bills submitted to her insurance carrier.

Please find attached a copy of Ms. Robinett's insurance card. Please submit this claim to her applicable insurance. If there are remaining deductibles or co-pay charges remaining, you may submit the bill to Ms. Robinett or directly to me.

I appreciate your assistance. Please let me know if you need additional information to process this claim.

Sincerely,

Jeff Scriber

JOS/tdb

cc.     Lacey Robinett

**EXHIBIT**
**3**



# Jeff Scriber P.A.

## ATTORNEY AND COUNSELOR AT LAW

May 20, 2016

Marcie Keziah
Survival Flight, Inc.
4824 E. Baseline Road, Suite 101
Mesa, AZ 85206-4677

|      |                        |                         |
|------|------------------------|-------------------------|
| Re:  | Name of Injured Person: | Lacey Robinett          |
|      | Account No.            | 00691                   |
|      | Date of Injury:        | December 26, 2015       |

Dear Ms. Keziah:

We are in receipt of Survival Flights' lien filed in connection with the above referenced account. At the time of the collision, Ms. Robinett did not have any MedPay coverage. However, she was covered by QualChoice. I am enclosing for your convenience a copy of Ms. Robinett's health insurance card.

Please accept this letter as our formal request that the bills be properly submitted for reimbursement. Also, we would appreciate verification that charges have been submitted. If there is a problem in submitting her bills to QualChoice, please let me know.

If you need any additional information or have questions, please do not hesitate to contact me.

Sincerely,

Jeff Scriber

JOS/tr

Enclosure(s)

cc:   Lacey Robinett
      Jason Marshall
      Marshall Law Firm

Tel: 870-336-0155
Fax: 870-934-8887

324 South Main
Post Office Box 9313
Jonesboro, Arkansas 72403

Email: scriberfirm@gmail.com



Life&Health
Individual Health Plans from QualChoice

Lacey M Robinett
ID: 162200044
Coverage: Subscriber Only
Effective Date: 09/01/2015
Co-Payments:      PCP: $0
RXBIN: 000647      PCN: CLAIMCR

Statewide QualChoice State
Sched III
RXGRP: QCA

Pharmacy Help Desk: 877.203.3118
First providers in the QualChoice Statewide Network at QualChoice.com or by
calling 888.636.6108. Services received outside the QualChoice Statewide
Network will be covered at the out-of-network benefit level. For emergencies
while traveling outside Arkansas, call QualChoice National Network at
888.460.7828 for provider information.



**SURVIVAL FLIGHT**
PO BOX 271375
Oklahoma City, OK 73137-1375
(480) 621-5638

| ACCOUNT #<br>00691 | STATEMENT DATE<br>02/18/2016 | AMOUNT DUE<br>$50,400.60 |
|---|---|---|

**IF PAYING BY CREDIT CARD, FILL OUT BELOW**

CARD NUMBER

| EXP. DATE | 3 DIGIT CODE | AMOUNT |
|---|---|---|

SIGNATURE

**ADDRESSEE**

LACEY ROBINETTE
1503 HOLLEY STREET
WALNUT RIDGE, AR 72476

**PLEASE REMIT TO**

SURVIVAL FLIGHT INC
PO BOX 271375
OKLAHOMA CITY, OK 73137-1375

☐ IF YOUR ADDRESS OR INSURANCE INFORMATION HAS CHANGED, PLEASE INDICATE THE CHANGES ON THE REVERSE SIDE AND RETURN TO OUR OFFICE
PLEASE RETURN TOP PORTION WITH YOUR PAYMENT

# STATEMENT

| Date | Description | Charges | Payments/<br>Adjustments | Patient<br>Balance |
|---|---|---|---|---|
| 12/26/2015 | Patient: LACEY ROBINETTE<br>Invoice: SF0661<br>Transported to: REGIONAL MEDICAL CENTER AT MEMPHIS | $50,400.60 | | $50,400.60 |

| | |
|---|---|
| Outstanding Balance: | $50,400.60 |
| Payment Plan Amount: | |
| Total Due: | $50,400.60 |

**Robinett_SurvivalFlight_MB1**

# Jeff Scriber P.A.

## ATTORNEY AND COUNSELOR AT LAW

May 20, 2016

COPY

Marcie Keziah
Survival Flight, Inc.
4824 E. Baseline Road, Suite 101
Mesa, AZ 85206-4677

Re:   Name of Injured Person:   Lacey Robinett
      Account No.                00691
      Date of Injury:            December 26, 2015

Dear Ms. Keziah:

We are in receipt of Survival Flights' lien filed in connection with the above referenced account.
At the time of the collision, Ms. Robinett did not have any MedPay coverage. However, she was
covered by QualChoice. I am enclosing for your convenience a copy of Ms. Robinett's health
insurance card.

Please accept this letter as our formal request that the bills be properly submitted for
reimbursement. Also, we would appreciate verification that charges have been submitted. If
there is a problem in submitting her bills to QualChoice, please let me know.

If you need any additional information or have questions, please do not hesitate to contact me.

Sincerely,

Jeff Scriber

JOS/tr

Enclosure(s)

cc:   Lacey Robinett
      Jason Marshall
      Marshall Law Firm

# Jeff Scriber P.A.

## ATTORNEY AND COUNSELOR AT LAW

October 10, 2016

Marcie Keziah
**Director of Patient Financial Services**
Survival Flight, Inc.
4824 E. Baseline Road, Suite 101
Mesa, AZ 85206-4677

|        |                            |                    |
|--------|----------------------------|--------------------|
| Re:    | Name of Injured Person:    | Lacey Robinett     |
|        | Account No.                | 00691              |
|        | Date of Injury:            | December 26, 2015  |

Dear Ms. Keziah:

On May 20th, 2016, I sent you a letter providing Lacey Robinett's medical insurance information. I have attached a copy of my earlier correspondence and the attachment for your convenience.

Despite my request, Survival Flight has continued to refuse to submit the charges associated with Ms. Robinett's services to QualChoice for reimbursement.

Please let this letter serve as my final demand that you release the lien filed against Ms. Robinett and all third-party insurance policies to which she is entitled to recover for her injuries. As I'm sure you are aware, your lien constitutes "balanced billing", which is an illegal billing practice.

Apparently, my initial letter did not impress upon you how serious I take your filing of an illegal lien through clear violations of the Arkansas Medicaid Program and the Affordable Care Act. As I'm sure you know from reviewing the insurance information I provided, Ms. Robinett was covered under a qualified health plan and was also a Medicaid recipient.

Please let me be clear – I expect to have a response from someone with your organization who has authority to resolve this dispute or I will take measures to protect Ms. Robinett and to assist the hundreds of other persons your company has harmed through its fraudulent billing practices. If you have questions as to my sincerity, I believe that the attached complaint will put those to rest.

Sincerely,

Jeff Scriber

JOS/nrj

Enclosure(s)
cc:    Lacey Robinett (w/o Enclosures)

---

Tel: 870-336-0155
Fax: 870-934-8887

324 South Main
Post Office Box 9313
Jonesboro, Arkansas 72403

Email: scriberfirm@gmail.com

## IN THE CIRCUIT COURT OF LAWRENCE COUNTY, ARKANSAS
### CIVIL DISTRICT

LACEY ROBINETT, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED

**COPY**

**PLAINTIFF**

VS.

CASE NO. CV-2016-70

**FILED**

JUN 24 2016
1:30 pm
_____ Circuit Clerk
Lawrence Co., AR

SHELBY COUNTY HEALTHCARE
CORPORATION d/b/a REGIONAL
MEDICAL CENTER and d/b/a REGIONAL
ONE HEALTH; and AVECTUS
HEALTHCARE SOLUTIONS, LLC

**DEFENDANTS**

### CLASS ACTION COMPLAINT

Comes now Plaintiff, Lacey Robinett, Individually and on Behalf of All Others

Similarly Situated, by and through her undersigned attorneys, Wilcox & Lacy, PLC and

Jeff Scriber, P.A., and for their Class Action Complaint against Defendants, Shelby

County Healthcare Corporation d/b/a Regional Medical Center and d/b/a Regional One

Health; and Avectus Healthcare Solutions, states and alleges the following:

### PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff is an individual resident of Lawrence County, Arkansas.

2.    Defendant Shelby County Healthcare Corporation d/b/a Regional Medical

Center and d/b/a Regional One Health (hereinafter "The Med") is a foreign corporation

with a principal place of business in a state other than Arkansas. The Med's registered

agent for service of legal process is Monica Wharton, 877 Jefferson Aveune, Memphis,

Tennessee 38103.



EXHIBIT
COLLECTIVE
A

# Jeff Scriber P.A.

## ATTORNEY AND COUNSELOR AT LAW

August 23, 2016

Andie H.
Survival Flight, Inc.
PO Box 271375
Oklahoma City, OK, 73137

*Via fax 480-275-4900*

**Attn: Andie H.**

| | | |
|---|---|---|
| Re: | Name of Injured Person: | Lacey Robinett |
| | Account No. | 00691 |
| | Date of Injury: | December 26, 2015 |

Dear Andie:

I appreciate you sending me a copy of the updated invoice for the above referenced account.

The statement indicates that a payment or adjustment was made to the account balance in the amount of $5,000. However, there is no information provided regarding the source of the $5,000 payment or of the reason for the adjustment. Please forward me a detailed bill containing all the information regarding the charges and all payments and adjustments to the account from the date of service to the present.

I appreciate your cooperation.

Sincerely,

Jeff Scriber

JOS/nrj

Enclosure(s)

**EXHIBIT**

4

---

324 South Main
Post Office Box 9313
Jonesboro, Arkansas 72403

Tel: 870-336-0155
Fax: 870-934-8887

Email: scriberfirm@gmail.com



# Survival Flight Inc

PO BOX 271375
OKLAHOMA CITY, OK 73137
(877) 581-6530



| | | |
|---|---|---|
| Patient name: ROBINETTE, LACEY | Run Number: | 15-814 |
| | Date of call: | 12/26/2015 |
| | Time of call: | 16:11 |

LACEY ROBINETTE
1503 HOLLEY STREET
WALNUT RIDGE, AR 72476

From: AR US 63 AND ELM ST
To: Regional Medical Center at Memphis

Primary payer: Qual Choice

Secondary payer: Bill Patient

| Description | Payer | Check # | Quantity | Unit Price | Payment Date | Amount |
|---|---|---|---|---|---|---|
| Rotor Base Rate | | | 1 | $22,500.00 | | $22,500.00 |
| Rotor Mileage Rate | | | 102 | $273.00 | | $27,846.00 |
| Payment-Check | Qual Choice | 94464 | | | 10/05/2016 | $2,322.54 |
| Payment-Check | Qual Choice | 94464 | | | 10/05/2016 | $2,677.46 |

This is your second notice and your balance is past due. Please remit payment or contact our office at (877)581-6530 for payment arrangements

**TOTAL AMOUNT DUE** $45,346.00

DETACH ALONG LINE AND RETURN STUB WITH YOUR PAYMENT. THANK YOU.

| | |
|---|---|
| Patient name: ROBINETTE, LACEY    Run Number: 15-814 | AMOUNT ENCLOSED    $ |

We Accept: [ ] VISA   [ ] Mastercard  [ ] Discover

Due on: 12/20/2016

Card Number:_____   Exp Date:_____

Card Holder Name:_____   Billing Zip Code:_____

Signature:_____   Security Code:_____

REMIT TO:  Survival Flight Inc
PO BOX 271375
OKLAHOMA CITY, OK 73137

Current date:  11/29/2016

**CONTRACT**
**TO PARTICIPATE IN THE ARKANSAS MEDICAL ASSISTANCE PROGRAM**
**ADMINISTERED BY THE DIVISION OF MEDICAL SERVICES**
**TITLE XIX (MEDICAID)**

The following agreement is entered into between **SURVIVAL FLIGHT INC.** hereinafter called Provider, and the Arkansas Department of Human Services, hereafter called Department.

1. Provider, in consideration of the covenants therein, agrees:

   A. To keep records in accordance with generally accepted standards for the type of business and the healthcare services provided, related to services provided to individuals receiving assistance under the State Plan and billing for such services.

   B. To make available and, upon request, furnish all records described above to the Department, the Medicaid Fraud Control Unit of the Arkansas Office of the Attorney General, the U.S. Secretary of the Department of Health and Human Services or a designated agent or representative of any entity entitled to records. For all Medicaid beneficiaries, these records include, but are not limited to those records which are defined in Section "A" of this contract. For clients who are not Medicaid beneficiaries, the records that must be furnished are financial records of charges billed to non-Medicaid insurance to ensure that charges billed to Medicaid do not exceed charges billed to non-Medicaid insurance.

      1) In connection with this contract each party hereto will receive certain confidential information relating to the other party. For purposes of this contract, any information furnished or made available to one party relating to the financial condition, results of operation, business, customers, properties, assets, liabilities or information relating to the financial condition relating to beneficiaries and providers, including but not limited to protected health information as defined by the Privacy Rule promulgated pursuant to the Health Insurance Portability and Accountability Act (HIPAA) of 1996, is collectively referred to as "Confidential Information."

      2) The contract shall safeguard the use and disclosure of information concerning applicants for or beneficiaries of Title XIX services in accordance with 42 CFR Part 431, Subpart F, and shall comply with 45 CFR Parts 160 and 164 and shall restrict access to and disclosure of such information in compliance with federal and state laws and regulations."

   C. To accept assignment under Title XVIII (Medicare) in order to receive payment under Title XIX (Medicaid) for any applicable deductible or coinsurance that may be due and payable under Title XIX (Medicaid).

   D. To bill Medicaid only after a service has been provided, or as otherwise specified in the appropriate Arkansas Medicaid Provider Manual, Official Notice, or Remittance Advice message.

   E. To accept payment from Medicaid as payment in full for a covered service, and to make no additional charges to the beneficiary or except any additional payment from the beneficiary except cost share (co-pay or deductible amounts) established by the Medicaid Program.

   F. To take assignment and file claims with third party sources (medical or liability insurance, etc.), and if third party payment is made to the Provider, to reimburse Medicaid up to the amount Medicaid paid for the services; to make no claims against third party sources for services for which a claim has been submitted to Medicaid; and to notify Medicaid of the identity of each third party source discovered after submission of a claim or claims to Medicaid.

   G. To make no charge to a beneficiary for a claim or a portion of a claim when a determination that the service was not medically necessary is made based on the professional opinion of a peer reviewer; except that such charge may be made to the beneficiary when he/she has requested the service and has prior knowledge that he/she will be responsible for the cost of such service; and to reimburse the Division of Medical Services for all monies paid for claims for services that later were determined "not medically necessary."

   H. To provide all services without discrimination on the grounds of race, color, national origin, or physical or mental disability within the provisions of Title VI of the Federal Civil Rights Act, Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990.

   I. To accept all changes legally made in the Program, and recognize and abide by such changes upon being notified by the Medicaid Program in the form of an update to, or an Official Notice/Remittance Advice Message pertaining to, the appropriate Arkansas Medicaid Provider Manual.

   J. That the Department has furnished the Provider with a copy of the Arkansas Medicaid Provider Manual containing the rules, regulations and procedures pertaining to his/her profession. The Provider agrees that the terms and conditions contained therein shall be a part of this contract if the terms were set out verbatim herein. The Provider states that he/she is currently licensed to practice in Arkansas or within the State where services were rendered and agrees to promptly notify the Department if his/her license is revoked or suspended. The Provider acknowledges by signature on this contract that he/she has received a copy of the appropriate Arkansas Medicaid Provider Manual.

   K. To conform to all Medicaid requirements covered in Federal or State laws, regulations or manuals.

**EXHIBIT**
S

L.  To certify by original signature within 48 hours of claims being submitted by an electronic media, a claim count and dollar amount billed, that the information on the claims submitted is true, accurate and complete. The Provider agrees to maintain this certification as a matter of record for all claims submitted electronically, by any media.

M.  To notify the Department before any change of ownership or operating status. Upon change of ownership or operating status the successor owner or operator shall, as a condition of assumption of this agreement, hold the Department harmless for any rate of payment increases, decreases, or adjustments without respect to whether the increase, decrease, or adjustment relates to services delivered before the change in ownership or operating status.

N.  FOR HOSPITALS ONLY

To understand that the Quality Improvement Organization (Arkansas Foundation for Medical Care, Inc.) is responsible for the review of Medicaid admissions to inpatient hospitals, specifically for length of stay purposes, medical necessity and as otherwise specified in the Memorandum of Understanding between the individual hospital and Arkansas Foundation for Medical Care, Inc.

II.  The Department, in consideration of the material benefits and the covenants and undertakings of the Provider, agrees as follows:

A.  To make payment to the above named Provider for the appropriate Medicaid covered services provided to eligible Medicaid beneficiaries in accordance with the applicable Medicaid reimbursement schedule in effect for the dates of service, and in accordance with the manual of rules, regulations and procedures that is a part of this contract.

B.  To notify the above named Provider of applicable changes in Medicaid rules and regulations as they occur.

C.  To safeguard the confidentiality of any medical records received by the Department or its fiscal intermediary, as specified in Federal and State regulations.

III.  This contract may be terminated or renewed in accordance with the following provisions:

A.  This contract may be voluntarily terminated by either party by giving thirty (30) days written notice to the other party without cause and/or convenience of either party.

B.  This contract will be automatically renewed for one year on July 1 of each year if neither party gives notice requesting termination.

C.  This contract may be terminated immediately by the Department for the following reasons:
1)  Returned mail
2)  Death of provider
3)  Change of ownership
4)  Or other reason for which a sanction may be issued as set forth under the applicable Medicaid Provider Manual.

If the Provider is a legal entity other than a person, the person signing this Provider Contract on behalf of the Provider warrants that he/she has legal authority to bind the Provider. The signature of the Provider or the person with the legal authority to bind the Provider on this contract certifies the Provider understands that payment and satisfaction of these claims will be made from Federal and State funds, and that any false claims, statements, or documents, or concealment of material fact, may be prosecuted under applicable Federal and State laws.

Provider Name: SURVIVAL FLIGHT INC
(As inscribed on previous page of contract)

| Provider | Provider Enrollment |
|---|---|
| By: *(signature)* | By: *(signature)* |
| (Signature Required) | (Signature) |
| Name: Lori Samples | Name: Freda Lwilliam |
| (Typed or Printed Name Required) | (Typed Name) |
| Title: Director | Title: PC Analyst |
| (Required) | |
| Date: 10/24/11 | Date: 1/31/2012 |
| (Required) | Effective Date of Contract: 1/31/2011 |

DMS-653 (R 9/08)
Page 3 of 3

**CONTRACT
TO PARTICIPATE IN THE ARKANSAS MEDICAL ASSISTANCE PROGRAM
ADMINISTERED BY THE DIVISION OF MEDICAL SERVICES
TITLE XIX (MEDICAID)**

The following agreement is entered into between _____ SURVIVAL FLIGHT INC _____ hereinafter called Provider, and the Arkansas Department of Human Services, hereafter called Department:

1.    Provider, in consideration of the covenants herein, agrees:

A.    To keep records in accordance with generally accepted standards for the type of business and the healthcare services provided, related to services provided to individuals receiving assistance under the State Plan and billing for such services.

B.    To make available and, upon request, furnish all records described above to the Department, the Medicaid Fraud Control Unit of the Arkansas Office of the Attorney General, the U.S. Secretary of the Department of Health and Human Services or a designated agent or representative of any entity entitled to records. For all Medicaid beneficiaries, these records include, but are not limited to these records which are defined in Section "A" of this contract. For clients who are not Medicaid beneficiaries, the records that must be furnished are financial records of charges billed to non-Medicaid insurance to ensure that charges billed to Medicaid do not exceed charges billed to non-Medicaid insurance.

1)   In connection with this contract each party hereto will receive certain confidential information relating to the other party. For purposes of this contract, any information furnished or made available to one party relating to the financial condition, results of operation, business, customers, properties, assets, liabilities or information relating to the financial condition relating to beneficiaries and providers, including but not limited to protected health information as defined by the Privacy Rule promulgated pursuant to the Health Insurance Portability and Accountability Act (HIPAA) of 1996, is collectively referred to as "Confidential Information."

2)   The contract shall safeguard the use and disclosure of information concerning applicants for or beneficiaries of Title XIX services in accordance with 42 CFR Part 431, Subpart F, and shall comply with 45 CFR Parts 160 and 164 and shall restrict access to and disclosure of such information in compliance with federal and state laws and regulations.

C.    To accept assignment under Title XVIII (Medicare) in order to receive payment under Title XIX (Medicaid) for any applicable deductible or coinsurance that may be due and payable under Title XIX (Medicaid).

D.    To bill Medicaid only after a service has been provided, or as otherwise specified in the appropriate Arkansas Medicaid Provider Manual, Official Notice, or Remittance Advice message.

E.    To accept payment from Medicaid as payment in full for a covered service, and to make no additional charges to the beneficiary or accept any additional payment from the beneficiary except cost share (co-pay or deductible amounts) established by the Medicaid Program.

F.    To take assignment and file claims with third party sources (medical or liability insurance, etc.), and if third party payment is made to the Provider, to reimburse Medicaid up to the amount Medicaid paid for the services; to make no claims against third party sources for services for which a claim has been submitted to Medicaid; and to notify Medicaid of the identity of each third party source discovered after submission of a claim or claims to Medicaid.

G.    To make no charge to a beneficiary for a claim or a portion of a claim when a determination that the service was not medically necessary is made based on the professional opinion of a peer reviewer; except that such charge may be made to the beneficiary when he/she has requested the service and has prior knowledge that he/she will be responsible for the cost of such service; and to reimburse the Division of Medical Services for all monies paid for claims for services that later were determined "not medically necessary."

H.    To provide all services without discrimination on the grounds of race, color, national origin, or physical or mental disability within the provisions of Title VI of the Federal Civil Rights Act, Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990.

I.    To accept all changes legally made in the Program, and recognize and abide by such changes upon being notified by the Medicaid Program in the form of an update to, or an Official Notice/Remittance Advice Message pertaining to, the appropriate Arkansas Medicaid Provider Manual.

J.    That the Department has furnished the Provider with a copy of the Arkansas Medicaid Provider Manual containing the rules, regulations and procedures pertaining to his/her profession. The Provider agrees that the terms and conditions contained therein shall be a part of this contract if the same were set out verbatim herein. The Provider states that he/she is currently licensed to practice in Arkansas or within the State where services were rendered and agrees to promptly notify the Department if his/her license is revoked or suspended. The Provider acknowledges by signature on this contract that he/she has received a copy of the appropriate Arkansas Medicaid Provider Manual.

K.    To conform to all Medicaid requirements covered in Federal or State laws, regulations or manuals.

EXHIBIT
6

L. To certify by original signature within 48 hours of claims being submitted by an electronic media, a claim count and dollar amount billed, that the information on the claims submitted is true, accurate and complete. The Provider agrees to maintain this certification as a matter of record for all claims submitted electronically by any media.

M. To notify the Department before any change of ownership or operating status. Upon change of ownership or operating status the successor owner or operator shall, as a condition of assumption of this agreement, hold the Department harmless for any rate or payment increases, decreases, or adjustments without respect to whether the increase, decrease, or adjustment relates to services delivered before the change in ownership or operating status.

N. FOR HOSPITALS ONLY

To understand that the Quality Improvement Organization (Arkansas Foundation for Medical Care, Inc.) is responsible for the review of Medicaid admissions to inpatient hospitals, specifically for length of stay purposes, medical necessity and as otherwise specified in the Memorandum of Understanding between the individual hospital and Arkansas Foundation for Medical Care, Inc.

II. The Department, in consideration of the material benefits and the covenants and undertakings of the Provider, agrees as follows:

A. To make payment to the above named Provider for the appropriate Medicaid covered services provided to eligible Medicaid beneficiaries in accordance with the applicable Medicaid reimbursement schedule in effect for the dates of service, and in accordance with the manual of rules, regulations and procedures that is a part of this contract.

B. To notify the above named Provider of applicable changes in Medicaid rules and regulations as they occur.

C. To safeguard the confidentiality of any medical records received by the Department or its fiscal intermediary, as specified in Federal and State regulations.

III. This contract may be terminated or renewed in accordance with the following provisions:

A. This contract may be voluntarily terminated by either party by giving thirty (30) days written notice to the other party without cause and/or convenience of either party.

B. This contract will be automatically renewed for one year on July 1 of each year if neither party gives notice requesting termination.

C. This contract may be terminated immediately by the Department for the following reasons:
1) Returned mail
2) Death of provider
3) Change of ownership
4) Or other reason for which a sanction may be issued as set forth under the applicable Medicaid Provider Manual.

If the Provider is a legal entity other than a person, the person signing this Provider Contract on behalf of the Provider warrants that he/she has legal authority to bind the Provider. The signature of the Provider or the person with the legal authority to bind the Provider on this contract certifies the Provider understands that payment and satisfaction of these claims will be made from Federal and State funds, and that any false claims, statements, or documents, or concealment of material fact, may be prosecuted under applicable Federal and State laws.

Provider Name: SURVIVAL FLIGHT INC

Provider (As inscribed on previous page of contract)     Provider Enrollment

By: _____ (Signature Required)     By: Ociola Williams (Signature)

Name: Chris Millard (Typed or Printed Name Required)     Name: Freda Williams (Typed Name)

Title: President (Required)     Title: PR Williams

Date: 9/10/14 (Required)     Date: 4-14-2015

Effective Date of Contract: 1/31/2011

DMS-653 (R 9/08)
Page 3 of 3